UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: GREGORY JOSEPH MILLER and   :

TAMMY LYNN MILLER,                         :        Chapter 7

Debtors                     :        Case No. 10-21288REF

---------------------------------------------------------------------------------------------

ETTINGER & ASSOCIATES LLC,          :

Plaintiff                  :

v.                           :        Adv. No. 10-2110

GREGORY JOSEPH MILLER and          :

TAMMY LYNN MILLER,                          :

Defendants               :

# MEMORANDUM OPINION

# I.  INTRODUCTION

This distasteful sanctions matter[1] is before me on remand from the Third

Circuit Court of Appeals through the District Court to this Court. On December 19, 2011,

I granted in part a motion for sanctions pursuant to Rule 9011 filed by

Debtors/Defendants, Gregory Joseph Miller and Tammy Lynn Miller ("the Millers"). My

order imposed sanctions, jointly and severally, in the amount of $20,000 against Plaintiff,

---

[1]     I dislike and very much would prefer to avoid imposing sanctions against persons appearing
before me, attorneys in particular. As I remarked in my oral decision when I granted the Millers' initial
motion for sanctions on October 24, 2011: "Sanctions motions are the bad side of what I do here and I've
had very few of them I'm happy to say." Notes of Testimony of October 24, 2011 hearing announcing
decision on merits of dischargeability adversary proceeding ("N.T. of October 24, 2011 hearing"), at p.
26, lines 2 – 3.

Ettinger & Associates, LLC ("Ettinger & Associates"), Plaintiff's principal, Neil Ettinger,

Esquire ("Mr. Ettinger"), and Plaintiff's counsel, Demetrious H. Tsarouhis, Esquire ("Mr.

Tsarouhis") (together, "Ettinger"), under Rule 9011(c)(1)(A). Ettinger appealed my

December 19, 2011 decision to the District Court, which determined that the Millers had

failed to comply with the safe harbor notice requirements of Rule 9011(c)(1)(A). The

District Court therefore reversed my decision imposing sanctions on Ettinger. The Court

also declined to remand to me to consider whether sanctions should be imposed pursuant

to some other authority. The Millers appealed the District Court's decision to the Third

Circuit Court of Appeals. The Circuit Court affirmed the District Court's decision that

imposition of sanctions against Ettinger under Rule 9011(c)(1)(A) was improper because

the Millers had failed to comply with the notice requirement.

But the Third Circuit went further and concluded that "sanctions may be

upheld, notwithstanding a safe harbor violation, if they are 'clearly valid' under a

different sanctioning mechanism." Ettinger & Associates, LLC v. Miller (In re Miller),

730 F.3d 198, 206 (3d Cir. 2013).[2] The Third Circuit therefore vacated the District

---

[2]    The Third Circuit decision was 2-1, with Chief Judge Theodore McKee concurring in Judge
Thomas Ambro's decision to reverse, vacate, and remand. Chief Judge McKee summarized Mr.
Ettinger's behavior in this case as follows:

> The Millers paid [Mr.] Ettinger almost $20,000 towards his $43,000 bill and they
> were continuing to make good faith payments to him of $100 to $200 per month
> pursuant to a state court order. However, the Millers had fallen upon hard times
> and were struggling to keep their heads above water. Despite the financial hardship
> the Millers were facing, and despite the monthly payments they were making,
> [Mr.] Ettinger thought it appropriate to file an adversarial complaint against his clients in
> their bankruptcy proceeding. He thus thought it appropriate to attempt to ensure that
> his clients' debt to him would survive the "fresh start" that is the underlying purpose

Court's decision with instructions to remand the matter to me to consider whether

sanctions against Ettinger are appropriate on grounds other than Rule 9011(c)(1)(A).

I find and conclude, based on the discussion below, that Ettinger's conduct

warrants imposition of sanctions under 11 U.S.C. §105(a), Rule 9011(c)(1)(B), and my

inherent powers, and that the Mr. Tsarouhis' conduct as counsel for Plaintiff warrants

imposition of sanctions under 28 U.S.C. §1927. These sanctions are "clearly valid." I will

therefore enter an order imposing sanctions, jointly and severally, against Ettinger in the

amount of $75,000 based on all of these authorities.[3]

---

of bankruptcy. Not surprisingly, the Bankruptcy Court concluded that [Mr.] Ettinger's
conduct required the sanctions that the court imposed.
    *I see no reason in law or in equity to allow such conduct to escape sanction
merely because of a counting error that arose from the fortuitous interposition of a
three day weekend.*
Miller, 730 F.3d at 207
[3]    But, as noted, Mr. Tsarouhis is the only party being sanctioned pursuant to Section 1927.

# II. BACKGROUND

## A. Factual History

In January 2008, well before filing their Chapter 7 bankruptcy petition, the Millers retained Mr. Ettinger and his firm, Ettinger & Associates, as their attorney. Mr. Ettinger represented the Millers in certain state court litigation involving Mrs. Miller's mother and stepfather. The familial dispute ultimately settled. Under the terms of the settlement, the Millers were required to pay Mrs. Miller's mother and stepfather $9,500. Mr. Ettinger charged the Millers approximately $43,000 for legal services in representing them in the state court litigation over two years.

The total amount at issue with Mrs. Miller's parents was about $16,500. Mr. Ettinger testified that he suggested to the Millers that they settle earlier or drop the litigation altogether, because the legal fees were high. I do not believe him.[4] To the

---

[4]    As I found and announced in my oral decision on October 24, 2011:
> My view of this, having seen him testify twice, is that Mr. Ettinger is all that is properly condemned by the public about lawyers. He's obnoxious, overbearing, and rude. He's not acted unlawfully or criminally. He's condescending. He is unprofessional.

N.T. of October 24, 2011 hearing at p. 9, lines 10 – 14.
See also N.T. of October 24, 2011 hearing at p. 15, lines 5 – 7 and 14 – 17:
> First witness was Mr. Ettinger. I wrote down next to it "disingenuous, no credibility, fencing with the question" as far as his answers to Mr. Lightner's questions. . . .
> Then there's a period of total confusion where I had no idea what was -- what the questions and answers were, largely because -- well, I have another adjective and that is "evasive" for Mr. Ettinger.

See also In re Miller, 447 B.R. 425, 430 – 31 (Bankr. E.D. Pa. 2011)(an earlier sanction case brought by the Millers against Ettinger). Although it is not directly related to the matter now before me, I refer to my numerous comments and findings about Mr. Ettinger's damaged credibility.
> Nothing in any of the more recent proceedings leads me to change my view of Mr. Ettinger.

contrary, I believe that Mr. Ettinger extended the litigation for personal gain. Mrs. Miller credibly testified, and I find, that when the Millers first retained Mr. Ettinger, they told him they wanted to pay Mrs. Miller's mother and step-father $10,000 because they believed that they owed them that amount. But Mr. Ettinger told the Millers not to settle at $10,000 because his fees would only be $5,000. $43,000 in fees plus a $9,500 settlement obligation later, the Millers filed their bankruptcy.

During the landlord tenant litigation, the Millers paid Mr. Ettinger approximately $20,000 in legal fees. Notwithstanding these payments, Mr. Ettinger sued the Millers in state court to collect immediate payment from the Millers of the remaining balance (approximately $23,000) that they owed to him. That suit, along with mounting financial difficulties caused by both of the Millers being out of work due to medical conditions, prompted the Millers to file their bankruptcy.

In late 2009, Mr. Ettinger twice petitioned the state court for leave to withdraw as counsel for the Millers. Mr. Ettinger's first petition claimed that the Millers were delinquent in paying his legal fee. His second petition alleged the Millers' lack of cooperation. Mr. Ettinger agreed to withdraw his first petition in exchange for the Millers' agreement to make good faith payments on the outstanding amount owed to him, which they did. The state court entered an order confirming the terms. Mr. Ettinger's second petition was rejected by the state court.

The Millers faced increasing financial difficulties throughout the state court litigation, attributable not only to the debt they owed to Mr. Ettinger, but also to medical conditions that caused them to be unable to work. Notwithstanding their financial and medical difficulties, the Millers managed to scrape together monthly good faith payments to Mr. Ettinger in the approximate amounts of $100 to $200. Despite receiving continuous good faith payments from the Millers, Mr. Ettinger sued them on March 11, 2010, to collect the outstanding balance of his fee (about $23,000 plus a demand for interest at 18%[5]), asserting only claims for breach of contract and quantum meruit. Mr. Ettinger alleged no fraud claims against the Millers in his state court collection complaint. On March 25, 2010, notwithstanding that Mr. Ettinger had sued them, the Millers showed extraordinary loyalty and good faith toward Mr. Ettinger by making yet another $100 payment to him as they had promised. The Millers did not file an answer to Mr. Ettinger's state court complaint, but instead filed their Chapter 7 petition initiating this bankruptcy case on March 30, 2010.

---

[5]    Although Mr. Ettinger demanded interest at 18% in his state court collection complaint, his fee agreement with the Millers expressly authorized interest at only 12%. This was a precursor to Ettinger's bad faith and intentional overreaching throughout this litigation.

# B. **The Dischargeability Proceeding**

## 1. **Dischargeability and Sanctions**

After the Millers filed their Chapter 7 petition, Ettinger & Associates,

through its principal Mr. Ettinger, retained Mr. Tsarouhis to file an adversary complaint

demanding that the outstanding fees owed by the Millers be declared nondischargeable

under 11 U.S.C. §523(a)(2), (4) and (6). Mr. Tsarouhis filed the adversary proceeding on

behalf of Ettinger & Associates on August 20, 2010. Among some basic allegations, Mr.

Tsarouhis alleged that the Millers' debt to Ettinger & Associates was incurred as a result

of "false pretenses, false representations, actual fraud, and or the intentional use of

materially false statements which were reasonably relied upon, because [the Millers']

conscious, deceptive conduct through multiple acts and omissions, wrongfully induced

[Ettinger & Associates] to continue to provide legal services." Complaint filed August

20, 2010, in Adv. No. 10-2110, at ¶15.

Throughout the course of this adversary proceeding, the parties engaged in

often contentious discovery, acting childishly in some of it. As the case progressed, the

Millers' counsel came to believe that the allegations in the complaint lacked evidentiary

and legal support. Ettinger pressed the complaint, they believed, for the improper

purposes of attempting to coerce settlement of the meritless claim, thereby interfering

with the fresh start that the Bankruptcy Code should afford the Millers. On January 31,

7

2011, the Millers filed and served on Ettinger and on Mr. Tsarouhis' law firm, Kiefer &

Tsarouhis, LLC (the "Tsarouhis Law Firm"), a motion for sanctions based on Rule 9011.

The Millers withdrew their motion the following day. On February 23, 2011,

the Millers filed a second Rule 9011 motion for sanctions, which was substantially the

same as the first motion. I entered a scheduling order on February 25, 2011, stating that

the 9011 motion was premature and would be held in abeyance until after I decided the

underlying dischargeability proceeding.

I conducted the substantive trial on dischargeability on April 19, 2011, after

which I entered an oral bench order finding that the debt owed by the Millers to Ettinger

& Associates was dischargeable. I entered judgment in favor of the Millers. Through a

second oral bench order, I scheduled a hearing on the Millers' motion for Rule 9011

sanctions to be held on May 31, 2011. I entered two written orders to memorialize the

oral bench orders. In my April 20, 2011 order, I confirmed the scheduling of the hearing

on May 31 for the Millers' second Rule 9011 motion. I directed (1) the Millers to file a

revised Rule 9011 motion and (2) Ettinger to file an answer to the Millers' revised Rule

9011 motion, if filed. In my April 21, 2011 order, I ratified, affirmed, and approved my

April 19 bench order ruling that Ettinger's claim was discharged.

## 2. The Millers' Counsel

Counsel for the Millers for much of this case was Thomas L. Lightner, Esquire ("Mr. Lightner"). Mr. Lightner represented the Millers through all of the Chapter 7 aspects of this case, in the substantive discharge litigation to judgment, and for all aspects (briefing, hearing, etc.) of the determination of the initial sanctions motions. In March 2012, Mr. Lightner brought co-counsel into the case – Susan Deely, Esquire ("Ms. Deely"). From Ettinger's appeal to the District Court, through the Millers' appeal to the Third Circuit Court, and back to this court for the Present Sanctions Motion,[6] Ms. Deely has served as Mr. Lightner's co-counsel. The two of them participated together in all aspects of this adversary proceeding and appeals from March 2012 to date.

Exhibit D-3, the Millers' statement of fees and costs (the "Fee Statement"), includes fees for both Mr. Lightner and Ms. Deely. The Millers' counsel asked for no fees from May 2014 to date (which would have amounted to many more thousands of dollars). Ettinger chose not to oppose or examine Mr. Lightner's testimony about the fees in the Fee Statement. With two lawyers representing the Millers, it was possible, however, that some unwarranted duplication of time in billing might arise. I therefore examined the Fee Statement sua sponte and find that the Millers' counsel were judicious in their billing. Ms. Deely was heavily involved as first chair in the appeals to both the District Court and the Circuit Court. She was involved in a more limited capacity in the

---

[6]    Defined in Section II. D, of text at page 12, infra.

hearing on the Present Sanctions Motion and the show cause order (which is described initially on pages 12 - 13, infra). Ms. Deely was primarily responsible for examining Mr. Lightner when he testified and for addressing issues that arose from the appeals. Mr. Lightner, on the other hand, was primarily responsible for the pleadings, briefing, and hearings on both the Present Sanctions Motion and the show cause order. From March 2012 to May 2014, Ms. Deely charged fees in excess of $40,000, while Mr. Lightner charged fees of only about $11,000. Ettinger did not challenge the reasonableness of the Fee Statement and I conclude independently that the fees charged by the Miller's counsel are reasonable.

## C. <u>The Millers' Second Amended Rule 9011 Sanctions Motion</u>

On May 6 and May 10, 2011, the Millers filed their amended and second amended sanctions motion based on Rule 9011 against Ettinger and the Tsarouhis Law Firm. On May 23, 2011, Ettinger responded to the Millers' first amended Rule 9011 motion and moved to strike the Millers' second amended Rule 9011 motion. Ettinger and the Tsarouhis Law Firm then responded to the second amended 9011 motion on May 24, 2011. On May 25, 2011, at the expedited hearing on Ettinger's motion to strike, I entered a bench order denying the motion and continuing the hearing on the Millers' second amended sanctions motion to June 20, 2011. I held hearings on the Millers' second amended sanctions motion and the parties filed their briefs as required.

On December 19, 2011, I announced on the record in open court my

decision granting in part the Millers' second amended 9011 motion and sanctioning

Ettinger jointly and severally $20,000.[7] I issued my written order confirming the same

result that same day. Ettinger appealed my decision to the District Court, which reversed,

finding that I should have denied the Millers' second amended sanctions motion because

the Millers failed to comply with the safe harbor notice requirements of Rule

9011(c)(1)(A). The District Court declined to remand the matter to me to consider

whether sanctions might be appropriately imposed on other grounds.

The Millers appealed the District Court decision to the Third Circuit Court

of Appeals, which agreed with the District Court that the Millers' second amended

sanctions motion should be denied. The Court of Appeals reiterated the District Court

determination that the Millers had failed to comply with the notice requirements of Rule

9011(c)(1)(A). The Circuit Court, however, vacated the District Court's decision and

directed the District Court to remand the matter to me to determine whether sanctions

should be entered against Ettinger pursuant to some other authority. The Circuit Court

reiterated certain alternative sources, initially identified by the District Court, by which

sanctions might be imposed, including: "(1) on the Court's own initiative pursuant to

---

[7]       Mr. Tsarouhis appears to be associated with attorney Kiefer (and perhaps other attorneys) in the Tsarouhis
Law Firm. The Millers identified the Tsarouhis Law Firm as a respondent in their second amended sanctions
motion, but failed to present any evidence whatsoever about the law firm or Mr. Tsarouhis' relationship or
standing with it. I therefore declined to impose sanctions against the Tsarouhis Law Firm.

Rule 9011(c)(1)(B); (2) using the Court's inherent power to sanction; or (3) under 11 U.S.C. §105." Miller, 730 F.3d at 206, (quoting Dist. Court Mem. Order at 20). The Circuit Court added a fourth ground on which sanctions might be warranted, namely 28 U.S.C. §1927. Id.

## D.  Present Sanctions Motion Proceedings

Upon the remand by the Third Circuit and the District Courts, I held a status conference with the parties on October 9, 2013, to determine the most efficient post-remand procedures to follow. I ordered that (1) the Millers file a new motion for sanctions with a supporting brief, (2) Ettinger file an opposing brief, and (3) the Millers file a reply brief. The Millers filed their new motion for sanctions on November 15, 2013 (the "Present Sanctions Motion"), and both parties filed their briefs in timely fashion. On February 28, 2014, I ordered Ettinger to show cause why they should not be sanctioned by me, jointly and severally, pursuant to (1) 11 U.S.C. §105(a), (2) Fed. R. Bankr. P. 9011(c)(1)(B), (3) 28 U.S.C. §1927, and (4) my inherent power to sanction wrongful and improper conduct by attorneys and participants who appear before me. The show cause order outlined Ettinger's specific conduct that could be found sanctionable. I scheduled a hearing for the show cause order on March 28, 2014.

The show cause hearing and the hearing on the Millers' Present Sanctions Motion were continued to April 28, 2014, and I conducted three additional consolidated hearings throughout 2014. I allowed the parties every opportunity for more time to prepare and present their evidence and legal argument either for or against the Present Sanctions Motion and in response to the show cause order.[8] I also requested that both parties file post-hearing briefs and that the Millers' counsel provide a more easily read (I asked them to use larger font), bifurcated Fee Statement, which would show the fees and costs before and on March 18, 2011 and on and after March 19, 2011. All post-hearing briefs, as well as the Fee Statement of the Millers' counsel, have been filed (except that the Millers' counsel once again used very small font in the Fee Statement). This matter is ready for final disposition.

---

[8]     At times, counsel complained that they had misunderstood what they were obliged or able to present in the hearing. To allow counsel to deal with their misunderstandings and present any evidence that they deemed necessary and appropriate, I scheduled more hearings than should have been necessary and heard everything counsel wanted to present.

# III. DISCUSSION[9]

## A. The supervisory rule, established by the Third Circuit in Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90 (3d Cir. 1988), has been expanded to apply to most motions for sanctions, requires that motions for sanctions be filed before entry of final judgment, and is satisfied in this case

The timing of a motion for sanctions is often critical to its viability.

As thoroughly explained  by Chief Bankruptcy Judge Eric Frank in Theokary v. Shay (In re Theokary), Adv. No. 09–051, Bankr. No. 07–11008 ELF, 2012 WL 3717967 (Bankr. E.D. Pa. Aug. 22, 2012):

> More than twenty (20) years ago, in Pensiero, the Court of Appeals announced a supervisory rule requiring that all motions for sanctions under Fed. R. Civ. P. 11 be filed before the entry of final judgment. The purpose of the supervisory rule is to conserve judicial resources by maximizing the likelihood that an appeal of a Rule 11 decision may be resolved at the same time as any appeal on the merits. The supervisory rule is intended to "eliminat[e] piecemeal appeals and avoid[ ] scenarios in which two separate appellate panels are forced to acquaint themselves with the pertinent facts and the parties' respective positions." In re Tobacco Road Associates, LP, 2007 WL 966507, at *22 (E.D. Pa. Mar. 30, 2007).
>
> Although the Court of Appeals has not stated so expressly in a precedential decision, courts in this circuit have held that the Rule 11 supervisory rule applies when Rule 9011 sanctions are sought in bankruptcy proceedings. See e.g., In re Nicola, 65 F. App'x. [Fed.Appx.] 759, 762 (3d Cir.2003) (nonprecedential); see also [In re]

---

[9]   Because the facts and issues in the Millers' Present Sanctions Motion are identical to those raised in my order to show cause, I will not separately address the Millers' Present Sanctions Motion or the show cause order. I will consolidate the discussion, findings of fact, and conclusions, of law for both.

Schaefer Salt [Recovery, Inc.], 542 F.3d [90] at 98 [(3d Cir.2008)] (collecting cases). I will follow the existing precedent in this regard.

Since its adoption, the supervisory rule has been both expanded and restricted. The Court of Appeals has applied the supervisory rule to a district court's sua sponte imposition of Rule 11 sanctions, see Simmerman v. Corino, 27 F.3d 58 (3d Cir.1994), and the imposition of sanctions under the court's inherent power, see Prosser v. Prosser, 186 F.3d 403 (3d Cir.1999). More recently, however, the Court declined to extend the supervisory rule to sanctions imposed under 28 U.S.C. § 1927. See Schaefer Salt, 542 F.3d at 102. Whether Schaefer Salt is a precursor to further contraction of the Pensiero supervisory rule is not for this court to say. Unless and until the Court of Appeals directs otherwise, this court is bound to apply the supervisory rule.

A mechanical application of the supervisory rule would mandate denial of the Motion for Sanctions because it was filed: (a) seventeen (17) months after the court's February 15, 2011 order entering judgment in favor of the remaining Defendants (if that was a final order, but see [In re ] Theokary, 444 B.R. [306] at 310 n. 6 [ (Bankr.E.D. Pa.2011) ] ) and (b) three (3) months after the April 10, 2012 order entering judgment against the remaining Defendants.

The supervisory rule, however, may not be so rigid. For example, in In re Brown, 1998 WL 848102, at *4–5 (E.D. Pa. Dec. 4, 1998), the district court affirmed the bankruptcy court's grant of a Rule 11 motion filed three (3) weeks after the entry of the final judgment. The court reasoned that, in the particular circumstances of that case, the movant's discovery of the Rule 11 violation was so close in time to the entry of judgment that the filing of the motion was sufficiently prompt as to warrant the relaxation of the supervisory rule. Accord Project 74 Allentown, Inc. v. Forst [Frost ], 143 F.R.D. 77, 85–87 (E.D. Pa.1992).

As the court stated in Tobacco Road, the supervisory rule is a guide for litigants filing Rule 11 motions for sanctions, generally requiring them to do so as early as practicable, but not necessarily establish[ing] a per se test for promptness that requires dismissal for noncompliance under all circumstances. While the rule provides the courts in the Third Circuit with the discretion to avoid consideration of Rule 11 motions filed after final judgment is entered in order to

15

promote judicial economy, it also appears to leave the courts with
some discretion in deciding when it is practicable to file a Sanctions
Motion. 2007 WL 966507, at *22 (footnotes and quotation marks
omitted).

Theokary, 2012 WL 3717967, at *2, n.4. See also In re Coquico, Inc., 508

B.R. 929, 938-39 (Bankr. E.D. Pa. 2014).

In Theokary, Chief Judge Frank concluded that the sanctions motion

before him was untimely, even under what he described as a "relaxed" standard

articulated in Tobacco Road. The movants in Theokary had waited at least 17

months from entry of final judgment before filing their sanctions motion. The case

before me stands in stark contrast. The Millers filed their first sanctions motion,

placing Ettinger on notice that they intended to seek sanctions, on January 31,

2011, before I entered judgment on the merits. They filed amended motions a little

less than three months before I entered my final decision on the merits of the

discharge litigation.

The Millers filed the Present Sanctions Motions against Ettinger as

and when I directed upon remand by the Circuit and District Courts. My sua sponte

order of February 28, 2013, which directs Ettinger to show cause why sanctions

should not be imposed, focuses on the same conduct that the Millers raised in their

Present Sanctions Motions. Both the Present Sanctions Motion and the show cause

order relate back to the Millers' original pre-judgment motions for sanctions.

Both the Present Sanctions Motion and my show cause order stem from the appellate courts' remanding the case to me to determine whether sanctions should be awarded against Ettinger under alternative sanctioning authority. As discussed above, the Circuit Court provided a list of such alternative authority by quoting the District Court's three options and adding one. The Millers' original sanction motion was filed well before entry of the final judgment in this adversary proceeding. The Present Sanction Motion and the show cause order relate back to, and address the same conduct challenged in, the Millers' initial sanctions motions. The pending sanction dispute is derived from the Third Circuit's decision that the matter be remanded to me specifically to consider sanctions against Ettinger under alternative authority. The Present Sanctions Motion and the show cause order were timely filed after the Circuit Court's remand.

I find and conclude, therefore, that the requirement of the Pensiero supervisory rule (that motions for sanctions be filed before entry of final judgment) is satisfied in this case. The initial motions for sanctions directly led to the Present Sanctions Motion and the show cause order and therefore anteceded the entry of my judgment against Ettinger on the merits of the Millers' discharge.

## B. **Sanctions are warranted against Ettinger, jointly and severally, under 11 U.S.C. §105(a)**

Section 105(a) of the Bankruptcy Code, 11 U.S.C. §105(a), provides bankruptcy judges with broad power to implement the provisions of the Bankruptcy Code and to prevent abuse of the bankruptcy process. In re Volpert, 110 F.3d 494, 500 (7th Cir.1997); Coquico, 508 B.R. at 940. Under Section 105(a), I "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of Title 11. 11 U.S.C. §105(a). Section 105(a) also permits me, sua sponte, to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. §105(a). In addition, Section 105(a) may be used "'to protect the integrity of the Bankruptcy Code as well as the judicial process,'" Brown v. Mitchell (In re Arkansas Communities, Inc.), 827 F.2d 1219, 1222 (8th Cir.1987) (quoting In re Silver, 46 B.R. 772, 774 (D. Colo.1985)). Finally (without exhausting an enumeration of its powers), Section 105(a) enables me to maintain control of my courtroom and administration of the dockets in cases before me. Volpert, 110 F.3d at 501.

When sufficient evidence exists to find an abuse of the judicial system, I may award sanctions against both attorneys and litigants under Section 105(a), without regard to the signed document requirement of Rule 9011. In re

Antonelli, No. 11-20255/JHW, 2012 WL 280722, at *13 (Bankr. D.N.J. Jan. 30,

2012); In re Bailey, 321 B.R. 169, 178 (Bankr. E.D. Pa. 2005); In re Collins, 250

B.R. 645, 657–59 (Bankr. N.D. Ill.2000);  In re Mergenthaler, 144 B.R. 632, 635

(Bankr. E.D.N.Y.1992) (citing United States v. International Brotherhood of

Teamsters, 948 F.2d 1338, 1345 (2d Cir.1991)). An explicit finding of bad faith or

of willful misconduct is required to award sanctions. Fellheimer, Eichen &

Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1225 (3d Cir. 1995);

Bailey, 321 B.R. at 178. See also Knupfer v. Lindblade (In re Dyer), 322 F.3d

1178, 1196 (9th Cir. 2003).

In the case before me, I find and conclude that Ettinger took what they

knew was a simple breach of contract action and improperly framed it as a

dischargeability adversary complaint alleging fraud.[10] Ettinger's behavior

interfered with the Millers' fresh start under the Bankruptcy Code. Ettinger knew

that the Millers faced financial and medical hardships and knew that, despite those

hardships, the Millers had continued to make good faith payments, even after Mr.

Ettinger sued them. The Millers ceased making payments on the debt only after

Mr. Ettinger forced them to file their Chapter 7 bankruptcy petition by suing them.

Ettinger attacked the Millers' discharge intending to coerce the Millers into paying

something to settle what Ettinger knew was a dischargeable claim.

---

[10]    Ettinger was attempting to dress a sheep in wolf's clothing.

Ettinger undertook this course of action knowing that prior to filing

for bankruptcy relief, the Millers had struggled to pay Mr. Ettinger $20,000, nearly

half, of his $43,000 total fee.[11] This approach to the Millers and their difficulties

show that Mr. Ettinger's conduct before this bankruptcy was egregious and

reprehensible. Mr. Ettinger's pre-bankruptcy behavior is a precursor to his bad

faith and willful misconduct and his abuse of both the bankruptcy process and the

judicial system.[12] Ettinger pressed this adversary proceeding through willful

misconduct and in bad faith. That is the ground for sanctions. It is appropriate and

clearly valid for me, therefore, to award sanctions against Ettinger, jointly and

severally, under Section 105(a).

I must next determine when the conduct of Ettinger crossed the line in

this case between legitimate advocacy and the use of the bankruptcy system and

judicial resources for an improper purpose. I suspect that Ettinger knew when they

filed their dischargeability adversary complaint that the Millers had not engaged in

fraudulent behavior or any other conduct actionable under Section 523(a) of the

---

[11]    The Millers incurred $43,000 in legal fees and paid $20,000 of them in a matter in which the total
amount at issue was about $16,500. I do not believe Mr. Ettinger's testimony that he recommended to the
Millers that they settle or discontinue the case rather than run up such excessive legal fees. See n. 4,
supra. The facts are otherwise than Mr. Ettinger claims. The Millers told Mr. Ettinger that they wanted to
settle the matter by paying $10,000 immediately, but he convinced them that he could save them money
through litigation. His interests were not with his clients, but were for his personal gain. The Millers'
litigation eventually settled for $9,500. Mr. Ettinger saved the Millers $500 in the settlement, but it cost
them $43,000 in fees.

[12]    I do not consider Mr. Ettinger's pre-bankruptcy actions as grounds for sanctioning Ettinger in this
adversary proceeding. I describe Mr. Ettinger's pre-bankruptcy actions to show consistency with his later
bad faith and oppressive conduct. He is the person who drove the administration of this case. Mr.
Tsarouhis had a very difficult client.

Bankruptcy Code.[13] Ettinger's underlying claim against the Millers amounted to a simple breach of contract. Ettinger later latched on to the possibility that the Millers might have consulted bankruptcy counsel in a desperate attempt to assert some colorable support at trial. The evidence before me is not sufficient, however, to find that when they filed their discharge adversary complaint either that Ettinger was acting in bad faith or that Ettinger's conduct amounted to willful misconduct.

To the extent my show cause order and the Millers' Present Sanctions Motion might have called into question the behavior of Ettinger during the discovery phase of this proceeding, I note that neither Ettinger's behavior nor the behavior of Millers' counsel during pre-trial matters was exemplary. The behavior of all counsel contributed to the inefficient and contentious nature of pre-trial discovery and the hostility of the parties throughout much of this litigation. I therefore cannot find on the record before me that Ettinger's pre-March 19, 2011 behavior during discovery and other pre-trial occurrences in this case was so egregious and reprehensible that it constituted willful misconduct or bad faith.[14]

---

[13]    Ettinger's complaint was notably stark in its absence of particular allegations of fraud by the Millers. Federal Rule of Bankruptcy Procedure 7009 incorporates Federal Rule of Civil Procedure 9, including Rule 9(b), which requires a party who pleads fraud to state with particularity the circumstances constituting the fraud. The Millers elected not to move to dismiss or for a more definite statement to question Ettinger's deficient pleading under Rule 9(b), but the pleading is deficient nonetheless.

[14]    The parties' bad blood was evident in this matter before remand. I previously remarked to them: One side stands to lose more than they anticipate; the other stands to recover less than they anticipate. N.T. of October 24, 2011 hearing at p. 5, lines 12 – 14.

The sufficiency of evidence that showed Ettinger's bad faith and willful misconduct changed on March 18, 2011, the date Ettinger deposed James Kutkowski, Esquire ("Mr. Kutkowski").

Ettinger's last vestige of support for denying the Millers' discharge was that the Millers engaged (or continued to utilize) the services of Ettinger & Associates knowing that they would ultimately discharge their obligation to Ettinger by filing bankruptcy. This allegation appears nowhere in Ettinger's complaint. To the contrary, Ettinger pleads only bald recitations of the elements of Section 523 (a)(2), (4), & (6). The question therefore becomes: When did Ettinger know that their legal theories of fraud lacked factual support.

To buttress their otherwise unsupported fraud theory, Ettinger attempted to assert before and during the trial on April 19, 2011, that the Millers knowingly met with a bankruptcy attorney during the course of the state court litigation. Ettinger claimed (orally, but not in the pleadings) that the Millers learned during a meeting with a bankruptcy attorney that they could discharge their debt to Ettinger & Associates by filing bankruptcy. With this knowledge, Ettinger's theory continues, the Millers continued to use the services of Ettinger & Associates. Ettinger claimed that the Millers were leading Ettinger & Associates to believe that they would pay the exorbitant fee, knowing full well that they would ultimately discharge the legal fee obligation by filing bankruptcy.

22

The sincerity of Ettinger's argument is belied by Mr. Ettinger's lack
of credibility throughout this matter. I found him to be disingenuous, evasive, and
shifty in his testimony at two hearings.[15] The ultimate problem that Ettinger faces
in this sanctions proceeding, however, is that, after the March 18, 2011 deposition
of Mr. Kutkowski, Ettinger knew full well that the last legal theory on which they
had relied collapsed upon the lack of evidentiary support. Nonetheless, they
pressed the meritless discharge proceeding against the Millers. Mr. Tsarouhis
admitted Ettinger's bad faith and willful misconduct: "[A]fter the deposition of Mr.
Kutkowski, we had reached out to Mr. Lightner in order to put this matter to bed,
because we were satisfied primarily at that point that we would not be victorious
on the merits of the underlying complaint." See Notes of Testimony of June 20,
2011 hearing on the Millers' second amended motion for sanctions ("N.T. of June
20, 2011 hearing"), p. 124, lines 6 – 10.

Mr. Ettinger had relentlessly demanded payment of the fee from the
Millers while representing them in the state court case. They were upset about his
continued demands and threats, which were exacerbated by their downward
spiraling financial and medical difficulties. Sometime in July or August 2009, the
Millers wanted to refinance their home to pay Mr. Ettinger's legal fee. The Millers
made an appointment with Jackson Crowder & Associates to investigate

---

[15]    See footnote 4, supra, for a fuller description of Mr. Ettinger's total lack of credibility.

refinancing their home. Mr. Miller met with Mr. Kutkowski, a representative of

Jackson Crowder & Associates, for the sole purpose of refinancing the mortgage

on their home. The Millers claimed that they did not know that Mr. Kutkowski was

an attorney and did not go to him seeking legal advice.[16] In the hearing on the

Millers' initial sanction motions, I found that the Millers may have known that Mr.

Kutkowski was an attorney but their incorrect affidavit claiming they had not

spoken with an attorney did not impact the case.[17] I reaffirm that finding and

conclusion from the prior sanctions hearing.

At his March 18, 2011 deposition, Mr. Kutkowski testified that he

determined, during his meeting with Mr. Miller, that the Millers would not qualify

for a mortgage modification and he therefore did not review an application for

legal services that he had given the Millers. Instead, he refunded the fee the Millers

had paid because they were not going to be clients of Jackson Crowder.

---

[16]   Ettinger attempts to make much of the Millers' affidavit and responses to discovery requests, which sought information about whether the Millers met with a bankruptcy attorney during Mr. Ettinger's representation of them. The Millers failed to mention that they met with Mr. Kutkowski during this time frame. But the Millers claimed that they did not know that Mr. Kutkowski was an attorney when the responses and affidavit were submitted, they did not go to see him for legal advice, and they did not seek advice about bankruptcy from anyone. The evidence proved three things: First, the Millers committed no wrongdoing; second, Mr. Kutkowski gave the Millers no advice about bankruptcy; and third, nothing establishes that the Millers incurred any debt owed to Ettinger by fraud, misrepresentation, false pretenses, or willful and malicious conduct. Not only does the evidence show this, but no evidence even remotely supports Ettinger's position, whether directly, indirectly, by implication, or by wildly stretching anything.

[17]   N.T. of October 24, 2011 hearing at p. 13, lines 1 – 9. Whether the Millers did not know Mr. Kutkowski was an attorney or whether the Millers did not speak with him about bankruptcy leads to the same result – no support whatsoever for Ettinger's position that the Millers knew they could and would discharge his legal fees through bankruptcy.

Mr. Kutkowski testified that the purpose of his meeting with Mr. Miller was to discuss mortgage modification. The Millers believed, and I accept, that Mr. Miller met with Mr. Kutkowski for the purpose of refinancing the mortgage on their residence. The mortgage modification vs. refinancing distinction makes no difference, however, because whether the Millers were seeking to refinance or to modify their mortgage is substantively the same. Mr. Miller's sole purpose in meeting with Mr. Kutkowski was to discuss a way for the Millers to obtain funds to pay Mr. Ettinger's legal fee by refinancing or modifying their mortgage. The evidence relating to Mr. Miller's meeting with Mr. Kutkowski is relevant, however, because it establishes that Mr. Miller did not meet with Mr. Kutkowski to discuss bankruptcy.

Mr. Kutkowski further testified in his deposition that he could not remember if he had discussed the possibility of bankruptcy with Mr. Miller.[18] This revelation must have signaled Ettinger that the legal theory that formed the basis of their dischargeabiltiy complaint lacked support in reality. Despite Mr. Kutkowski's testimony in his deposition, Ettinger tried to claim at trial (but not in their

---

[18]    For some reason, Mr. Tsarouhis ordered a recess toward the end of the very short Kutkowski deposition. Upon his return to the deposition, Mr. Kutkowski testified a bit differently (as if he had been coached), adding that he would usually offer his services as a bankruptcy attorney to potential clients with whom he met. The Millers' counsel chose not to attend the Kutkowski deposition and I have no record of what was discussed during the recess. Mr. Kutkowski never said that he had offered his services as a bankruptcy attorney to the Millers. He testified both in his deposition and in court that he had no recollection of speaking about bankruptcy with the Millers. In any event, he testified at trial that he had spoken with Mr. Miller only about refinancing their mortgage and that he did not recall talking to him about bankruptcy.

complaint) that the Millers (1) met with a bankruptcy attorney during the state

court litigation, (2) learned they could discharge the fee, (3) continued to have

Ettinger & Associates represent them, and (4) had no intention to pay the legal fee,

intending instead to discharge it in bankruptcy.

After Mr. Kutkowski's deposition, which provided no support for

Ettinger's the-Millers-intended-to-get-a-bankruptcy-discharge theory, Ettinger

should have moved immediately to dismiss the complaint. To the contrary, Ettinger

continued all efforts to thwart the Millers' fresh start under the Bankruptcy Code

by pressing that I find that the debt is non-dischargeable. Ettinger persisted with

the litigation knowing that (1) the Millers had made every effort to make good

faith payments prior to their bankruptcy filing, (2) the Millers had been current

with these payments when Mr. Ettinger filed his state court collection complaint

against them, (3) none of the Millers' actions in entering into the lawyer/client

relationship amounted to fraud, and (4) the Millers had shown no intention to

defraud Mr. Ettinger in any way particularly not by planning to have the fee

discharged in bankruptcy.[19]

Mr. Tsarouhis realized that Mr. Kutkowski's deposition testimony

eliminated all support for Ettinger's claim. Mr. Tsarouhis testified: "Once we had

---

[19]    My prior determination granting sanctions was replete with findings, which I incorporate herein,
that Ettinger could not have thought, after March 18, 2011, that Mr. Kutkowski had given the Millers
advice on bankruptcy generally or discharge in particular: N.T. of October 24, 2011 hearing at p. 7, lines
20 - 23; p. 14, lines 18 - 21; p.19, lines 6 - 14; and p. 20, lines 14 - 18.

discovered [the identity of the bankruptcy counsel] and had a chance to examine that information, we were ready to withdraw the complaint."[20] But Ettinger did not withdraw the complaint. I was told that Ettinger and the Millers engaged in some preliminary, oral settlement discussions, none of which were memorialized or consummated. Ettinger claimed they wanted to withdraw the complaint but could not do so because the Millers had filed their answer including a counterclaim and would not consent. Ettinger could easily have moved to withdraw the complaint. See Federal Rules of Bankruptcy Procedure 7041, incorporating Federal Rule of Civil Procedure 41(a)(2). They chose not to do so.

Ettinger's conduct amounts to an intentional abuse of both the judicial system and the bankruptcy process and was intentionally undertaken in bad faith as a negotiating ploy. Ettinger knew full well that their case had no factual or legal support but chose not to withdraw it. I conclude, therefore, that sanctions are clearly valid and should be imposed against Ettinger, jointly and severally, under Section 105(a), for their bad faith and willful misconduct.

## C. **Sanctions are warranted against Ettinger, jointly and severally, under Fed. R. Bankr. P. 9011(c)(1)(B)**

Federal Rule of Bankruptcy Procedure 9011(c)(1)(B) provides authority for me to sanction Ettinger sua sponte for violating Rule 9011(b). Rule

---

[20]   See N.T. June 20, 2011 hearing at p.129, lines 17-19. See also Mr. Tsarouhis' similar statement quoted in the text at page 23, supra.

9011(b) requires that parties making representations to the court certify that "the

allegations and other factual contentions have evidentiary support or, if specifically

so identified, are likely to have evidentiary support." Fed. R. Bankr. P. 9011(b)(3).

A party must reach this conclusion based on "inquiry reasonable

under the circumstances." Fed. R. Bankr. P. 9011(b).

> The concern of Rule 9011 is not the truth or falsity of the
> representation in itself, but rather whether the party
> making the representation reasonably believed it at the
> time to have evidentiary support. In determining whether a
> party has violated Rule 9011, the court need not find that a
> party who makes a false representation to the court acted in
> bad faith.

In re Taylor, 655 F.3d 274, 282 (3d Cir. 2011). Rather, "[t]he imposition of Rule

11 sanctions . . . requires only a showing of objectively unreasonable conduct."

Fellheimer, 57 F.3d at 1225.

Rule 9011(b) also requires that parties who present a petition,

pleading, motion, or any other paper to the court certify that "it is not being

presented for any improper purpose, such as to harass or to cause unnecessary

delay or needless increase in the cost of litigation." Fed. R. Bankr. P. 9011(b)(1).

See Midlantic Nat'l Bank v. Kouterick (In re Kouterick), 167 B.R. 353, 365-66

(Bankr. D.N.J. 1994). Most importantly in this matter, "the obligations imposed by

F.R.B.P. 9011(b) expressly extend to 'later advocating' a 'position after learning

that the position no longer has merit.'" Coquico, 508 B.R. at 940 (quoting

Theokary v. Abbatiello (In re Theokary), 468 B.R. 729, 746 (Bankr. E.D. Pa.

2012); aff'd, 2013 WL 5823849 (E.D. Pa. Oct. 29, 2013).

As I explained in my discussion of Section 105(a) above, Ettinger

knew, after Mr. Kutkowski's deposition on March 18, 2011, that their complaint

lacked any evidentiary support.[21] But they continued to press their complaint for

the improper purpose of trying to coerce the Millers into settling a specious claim.

By engaging in this behavior, Ettinger violated Rule 9011(b)(1) and (b)(3) and

deliberately tried to interfere with the Bankruptcy Code's fresh start afforded to the

Millers.[22]

Ettinger's post-March 18, 2011 conduct not only justifies, but

demands as clearly valid, that sanctions be imposed, jointly and severally, under

Rule 9011(c)(1)(B) against Ettinger.[23] Bailey, 321 B.R. at 183 (when a court finds

that a violation of Rule 9011 occurred, sanctions are mandatory).

---

[21]    See Mr. Tsarouhis' testimony set forth in the text at pages 24 and 27, supra.
[22]    By the evidence before me, I cannot conclude that Ettinger's conduct prior to March 19, 2011
(during discovery and otherwise) violated Rule 9011(b)(1) or (b)(3). Before Mr. Kutkowski's March 18,
2011 deposition, it is remotely possible that Ettinger could have believed that their allegations had or
might have evidentiary support. I cannot, therefore, conclude that the complaint was filed and discovery
was pursued for an improper purpose. The conduct of Ettinger prior to March 19, 2011, barely satisfies
the objectively reasonable standard of Rule 9011(b) and I will not therefore sanction Ettinger under Rule
9011(c)(1)(B) for pre-March 19 action.
[23]    Ettinger argues that I may not impose sanctions based on Rule 9011(c)(1)(B) because Rule
9011(c)(2)(B) requires that my show cause order be entered before a voluntary dismissal or settlement of
the claims. This argument is wholly misplaced, however, because no voluntary dismissal or settlement of
the claims occurred in this adversary proceeding. Furthermore, as stated in Section III. A, at pages 14 –
17, supra, the Pensiero supervisory rule about moving for sanctions before entry of final judgment has
been satisfied in this case.

## D. **Sanctions are warranted against Ettinger, jointly and severally, pursuant to my inherent power to sanction attorneys and parties who appear before me**

The United States Supreme Court has long recognized the inherent power of a federal court to "assess attorney's fees when a party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Chambers v. Nasco, Inc., 501 U.S. 32, 45-46 (1991)(quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975)). "[I]f a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party." Chambers, 501 U.S. at 45-46 (quoting Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580 (1946)). To impose sanctions under my inherent power, however, I must find that the party against whom sanctions are to be imposed acted in bad faith. Chambers, 501 U.S. at 45-46;  In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 278 F.3d 175, 181 (3d Cir. 2002); Theokary, 468 B.R. at 748.

As I previously stated, Ettinger acted in bad faith when they extended prosecution of their case against the Millers following Mr. Kutkowski's deposition on March 18, 2011. At the Kutkowski deposition, Ettinger learned that Mr. Kutkowski met with Mr. Miller to discuss a possible mortgage modification but

did not remember speaking to Mr. Miller about bankruptcy.[24] Ettinger knew the

Millers had suffered serious financial difficulties but had continued to make good

faith payments until they filed their bankruptcy petition. Ettinger should have, first,

acknowledged that the complaint lacked evidentiary and legal support, second,

voluntarily dismissed the action, and third, apologized to the Millers.[25] Instead,

Ettinger pressed the complaint and moved forward with its bad faith effort to

interfere with the Miller's fresh start by purposely coercing them to settle

Ettinger's claim. I find and conclude that Ettinger's conduct was vexatious,

wanton, and intentionally undertaken for improper and oppressive reasons.

　　　　　For all of these reasons, which are clearly valid, I will impose

sanctions against Ettinger, jointly and severally, pursuant to my inherent authority

to sanction attorneys and litigants who appear before me. Miller, 730 F.3d at 206,

(quoting Dist. Court Mem. Order at 22).

## E.  Sanctions are warranted against Mr. Tsarouhis under 28 U.S.C. §1927

　　　　　Section 1927 provides that "[a]ny attorney . . . who so multiplies the

proceedings in any case unreasonably and vexatiously may be required by the

court to satisfy personally the excess costs, expenses, and attorneys' fees

---

[24]　　See footnotes 17 - 21, and accompanying text at pages 24 – 29, supra.
[25]　　See Fed. R. Bankr. Proc. 41(a)(2) and text at page 27, supra. I do not sanction Ettinger for the failure to apologize, which is simply discourteous and a lack of good manners.

reasonably incurred because of such conduct." 28 U.S.C. § 1927. Although some

courts have ruled otherwise, the Third Circuit has held that bankruptcy courts have

the power to impose sanctions against an attorney under Section 1927. In re

Schaefer Salt Recovery, Inc., 542 F.3d 90, 105 (3d Cir. 2008) (although a

bankruptcy court is not a court of the United States, it is a unit of the district court

and therefore has the authority to impose sanctions under Section 1927). See also

Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.), 931

F.2d 222, 230 (2d Cir. 1991) (concluding without discussion that a "bankruptcy

court may impose sanctions pursuant to 28 U.S.C. § 1927").

By its very terms, however, Section 1927 authorizes sanctions only

against attorneys -- not their clients. Loftus v. Southeastern Pennsylvania Transp.

Auth., 8 F. Supp. 2d 458, 461 (E.D. Pa. 1998); Coquico, 508 B.R. at 941. I

therefore may award sanctions against only Mr. Tsarouhis, but not against his

clients, Mr. Ettinger or Ettinger & Associates, under Section 1927.[26]

To sanction an attorney under Section 1927, I must find that he has

"'(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3)

thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by

---

[26]    This may be of no particular consequence, however, because, for all of the reasons stated earlier, sanctions are appropriately imposed against Mr. Ettinger and Ettinger & Associates, jointly and severally with Mr. Tsarouhis, under 11 U.S.C. §105(a), Fed. R. Bankr. P. 9011(c)(1)(B), and my inherent power to sanction attorneys and parties who appear before me. On the other hand, I observe that Mr. Tsarouhis was stuck with an attorney as a very difficult client.

intentional misconduct.'" Schaefer Salt, 542 F.3d at 101(quoting Prudential Ins.

Co., 278 F.3d at 188; see also  Hackman v. Valley Fair, 932 F.2d 239, 242 (3d Cir.

1991); Argus Grp. 1700, Inc. v. Steinman (In re Argus Grp.1700, Inc.), Civil

Action Nos. 96-8011, 96-8244 and 96-8618, 1997 WL 87623, at *2 (E.D. Pa. Feb.

20, 1997).

Of particular relevance here, the Third Circuit has held that the

"intentional advancement of a baseless contention that is made for an ulterior

purpose, e.g., harassment or delay" may be indicative of bad faith. Ford v. Temple

Hospital, 790 F.2d 342, 347 (3d Cir.1986). As stated by the District Court:

> When a claim is advocated despite the fact that it is patently
> frivolous or where a litigant continues to pursue a claim in the
> face of an irrebuttable defense, bad faith can be implied. See
> Hicks v. Arthur, 891 F. Supp. 213 (E.D. Pa.1995)(imposing
> §1927 sanctions because claims plainly barred by federal and
> state law); Boykin, 905 F. Supp. at 1335 (finding bad faith when
> attorney pursued claim after being informed that it was time
> barred). Additionally, "even if a lawsuit was initially filed in
> good faith, sanctions may be imposed on an attorney for all costs
> and fees incurred after the continuation of the lawsuit which is
> deemed to be in bad faith." Id. at 1446–47 (citing Fred A. Smith
> Lumber Co. v. Edidin, 845 F.2d 750 (7th Cir.1988); Matthews v.
> Freedman, 128 F.R.D. 194, 207 (E.D. Pa.1989)).

Lotus, 8 F. Supp. 2d at 461.

In the case now before me, Mr.Tsarouhis followed his attorney

client's demand to unreasonably and vexatiously extend this adversary proceeding

by continuing after March 18, 2011, to pursue it through to trial, knowing it lacked

33

evidentiary and legal support.[27] This adversary proceeding was being advanced by Mr. Ettinger for the wrongful purposes of interfering with the Millers' fresh start and harassing the Millers to coerce them to settle and pay part of Ettinger's bogus claim.

Bad faith of, and intentional misconduct by, Mr. Tsarouhis on behalf of his client can be implied, see Loftus, 8 F. Supp. 2d at 461. That bad faith and intentional misconduct, undertaken by Mr. Tsarhouis for his client, warrant sanctions, which are clearly valid, against counsel under Section 1927. Id. Mr. Tsarouhis' conduct, however, was only marginally as bad as that of his attorney client Mr. Ettinger. This difference impacts, to some extent, my apportionment of liability for sanctions below.

## F. **Determining the sanction to be imposed**

Having concluded that sanctions shall be awarded against Ettinger, I will now analyze the type of sanction to impose. The type of sanction, including any decision to award attorneys' fees, is within my discretion, as the judge. Loftus, 8 F. Supp. 2d at 463; Bailey, 321 B.R. at 183. "'To properly exercise this discretion, [I] must balance the equities between the parties by looking to mitigating factors and the circumstances surrounding the case." Loftus, 8 F. Supp.

---

[27]    See Mr. Tsarouhis' testimony set forth in the text at both page 23 and pages 26 - 27, supra.

2d at 463 (quoting Ford, 790 F.2d at 347). Fundamentally, the sanction should be

designed to deter the responsible party (and others similarly situated) from

engaging in the culpable, or similar, conduct. Taylor, 655 F.3d at 288.

A court may award either monetary or non-monetary sanctions.

Bailey, 321 B.R. at 183. "If monetary sanctions are awarded, the court should

consider what amount is needed to deter [the] responsible person, given his

financial resources, from repetition of similar activity." Id. The purpose of

awarding sanctions is not to make the injured party whole. Rather, the purpose and

the primary considerations are (1) to accomplish the twin goals of specific and

general deterrence, Coquico, 508 B.R. at 948, and (2) to preserve the integrity of

the Bankruptcy Code and the judicial process, Arkansas Communities, 827 F.2d at

1222. In addition, a sanction may be allocated between an attorney and his client

according to their respective responsibility. "When the culpability is shared, as

here, courts can impose joint and several liability." Bailey, 321 B.R. at 183.

Ettinger's culpability is shared among them and I will impose the sanction jointly

and severally, although I regard Mr. Ettinger's attitude, intentions, and purpose as

being far worse than Mr. Tsarouhis.

The Millers request that sanctions be imposed against Ettinger in the

amount of $131,999.71. That figure is derived from the Fee Statement generated

by their counsel for all services related to this case from August 9, 2010 through

May 13, 2014.[28] I admitted the Fee Statement into evidence as Exhibit D-3 during the June 13, 2014 hearing. Throughout the hearings, I heard evidence relating to both the show cause proceeding and the Millers' Present Sanctions Motion. The Fee Statement shows the time spent, the hourly rate charged, and the costs incurred by the Millers' counsel during the relevant time frame. The total bill for all services rendered during the stated time period is $131,999.71. Of this amount, $31,226.76 represents the amount billed from August 9, 2010 through March 18, 2011, inclusive, and $100,772.95 represents the amount billed from March 19, 2011 through May 13, 2014, inclusive.[29]

As noted at length above, I determined that I cannot definitively say that Ettinger's conduct, prior to March 19, 2011, warranted sanctions. Accordingly, I conclude that the fees and costs for legal services provided before March 19, 2011 (i.e., $31,226.76) are not part of any sanction I impose here.

---

[28]    The Millers' counsel show admirable professionalism by electing to cut off their request for fees as of May 13, 2014, even though substantial time and thousands of dollars must have been expended on various aspects of this matter after that date.

[29]    The Fee Statement, as originally filed, did not contain separate calculations for the amount of time spent and charged for services rendered before and after March 18, 2011, the pivotal date in this case. March 19 is the date on which Ettinger's conduct became sanctionable. On January 15, 2015, therefore, I, directed the Millers' counsel to re-file the Fee Statement, which itemizes and calculates the total fees sought from Ettinger. I also directed counsel to calculate the fees and costs in the Fee Statement as those that were incurred up to and including March 18, 2011, and those incurred after March 18, 2011. I also directed that the Fee Statement include a calculation of the total amount alleged to be due for each time period. The Millers' counsel filed the Fee Statement, which included no new evidence, but merely bifurcated the fees on the basis of the date of March 18, 2011. I had also directed the Millers' counsel to produce the Fee Statement with a larger font to replace the tiny font used for the original. Counsel did not change the font.

As has been often mentioned, this case took a dramatic turn after Mr. Kutkowski's March 18, 2011 deposition. After the deposition, the conduct of Ettinger violated Rule 9011(b)(1) and (3) and 28 U.S.C. §1927 and constituted willful and intentional misconduct and bad faith. Ettinger should have dismissed the case; but he did not.[30] All of Ettinger's conduct after March 18, 2011, therefore, is subject to being sanctioned.

Counsel for the Millers established that the Millers had incurred $100,772.95 in reasonable fees and costs after March 18, 2011 and before May 13, 2014. Ettinger failed to present any evidence or argument that might show otherwise. When the Millers presented the Fee Statement at the hearing as Exhibit D-3 Mr. Tsarouhis objected, saying that he had not had an opportunity to review the Fee Statement because it had not been given to him before the hearing. I granted him a roughly one-month continuance to allow him to review D-3. When we reconvened the hearing, Mr. Tsarouhis had no questions about the Fee Statement. The amount in the Fee Statement does not, however, necessarily equate to the amount of a sanction that I should impose against Ettinger. More analysis is required before I may impose an appropriate monetary sanction. See Loftus, 8 F. Supp. 2d at 463.

---

[30]    See discussion about dismissing this case and Rule 41(a)(2) in text at page 27, supra.

Instead, I "'must balance the equities between the parties' by looking to mitigating factors and the circumstances surrounding the case." Loftus 8 F. Supp. 2d at 463 (quoting Ford, 790 F.2d at 347). The sanction imposed should be designed to deter the responsible party, and others similarly situated, from engaging in the culpable conduct or conduct that is similar. Taylor, 655 F.3d at 288. Sanctions should not be imposed solely to make the injured party whole. Rather, sanctions should be awarded (1) to insure specific and general deterrence, Coquico, 508 B.R. at 948, and (2) to preserve the integrity of the Bankruptcy Code and the judicial process. Arkansas Communities, 827 F.2d at 1222.[31]

If the amount requested, although reasonable and legitimately incurred, exceeds the amount necessary to deter the responsible persons, given their financial resources, from repetition of similar activity, it may be reduced. See Loftus, 8 F. Supp. 2d  at  463-64; Coquico, 508 B.R. at 948; Bailey, 321 B.R. at 183. In addition, I am not required to impose sanctions on Ettinger in the exact amount requested merely because the Millers have demonstrated that their legal fee request is reasonable. As stated by the Loftus District Court: "Nor should a sanction be imposed that is greater than necessary to achieve the public policy objectives underlying the statute [or rule]. In the final analysis, [I] am called upon

---

[31]   I recognized this purpose of sanctions in my prior consideration of the initial sanctions motions. N.T. of October 24, 2011 hearing at p. 15, lines 3 - 8.

to balance the equities to determine what sanction will best serve the interests of justice." <u>Loftus</u>, 8 F. Supp. 2d at 463-64.

In this case, I note that Mr. Ettinger, Mr. Tsarouhis, and the Millers' counsel all practice in either solo or small firms. Neither Mr. Ettinger nor Mr. Tsarouhis presented evidence of their firms' or their personal financial status. Neither presented evidence that the imposition of a $100,000 sanction would severely harm them. I therefore am left to assume that granting such an award of sanctions might or might not impose a severe financial burden on them. On the other hand, neither of the counsel for the Millers presented evidence of their firms' or their personal financial status. Neither presented evidence that a failure to collect the entire $100,772.95 would severely harm them. I therefore am left to assume that denying the Millers' counsel reimbursement of fees legitimately incurred on behalf of the Millers might or might not impose a financial burden on the Millers' counsel.

Ettinger could have reduced their exposure to sanctions after the original sanctions motions, hearing, and decision. I considered the reasonable fees of counsel for the Millers (in excess of $30,000) and reduced it to $20,000. Ettinger could have eliminated all exposure to the Millers' current $100,772.95 fee by paying the $20,000 when imposed. Ettinger declined to do so and pressed this

dispute.[32] Quickly perusing the language used by the Third Circuit judges in the

remand, in conjunction with my original decision, Ettinger should have seen that

they had severe exposure on remand, that they should acknowledge the error of

their ways, and that they should settle with the Millers. I suggest they should have

settled, although counsel for the Millers (I'm told) refused to settle for less than the

full amount of their fees (or some other amount).[33] I would gladly have asked one

of my colleague judges to guide the parties to resolution. A mediated settlement

might not have resulted in a "win" for either party (certainly a hallmark of

mediation), but the litigation would have ended. Ettinger failed to do that. Perhaps

the $20,000 sanction was not enough to deter Ettinger from similar action in the

future. Perhaps the reduction of the sanction to roughly 2/3 of the Millers' fees was

too great a reduction to deter Ettinger. I have no evidence one way or the other on

the deterrence effect of my prior sanction award of $20,000.

Although entirely justified as recompensing the Millers for Ettinger's

egregious conduct, an award of $100,772.95 might exceed the amount necessary to

deter Ettinger and others from engaging in similar conduct in the future. Loftus, 8

F. Supp. 2d at 464. I also fear that an award of a $100,772.95 sanction might have

a chilling effect on counsel acting in good faith in matters that might involve

---

[32]     I remarked in a decision in an earlier aspect of the main bankruptcy case that I did not want
sanctions litigation to degenerate into a "cottage industry" for lawyers. Miller, supra, 447 B.R. at 429.
[33]     See text at page 27, supra, relating to minimal reference to the parties' wholly ineffectual
attempt(s?) at settlement.

meritorious, but novel, issues and defenses. Id. I also reiterate that the Millers'

counsel avoided overreaching by voluntarily omitting all time after May 2014,

thereby reducing their fees by what must be thousands of dollars.

In addition, as I stated in page 21, supra, counsel's behavior during

discovery and the other phases of the litigation was less than exemplary for all

parties. The behavior of all counsel in this proceeding contributed to a lesser or

greater extent to the contentious nature that was evident throughout the litigation.

In my oral decision granting the initial motions for sanctions on October 24, 2011,

I remarked: "This is a classic [example] of the parties dug [sic] their feet in, just

senselessly drawing out this litigation, costing each other lots and lots of time and

money as well as emotional problems."[34] As a result, I found before and I find now

that counsel for the Millers should not be rewarded by recovery of their total fee.

Coquico, 508 B.R. at 948. "[I] may reduce the attorney fees awarded if, in

balancing the equities, [I determine] that the interests of justice would be better

served by such action." Loftus, 8 F. Supp. 2d at 463 (quoting Ford, 790 F.2d at

347, n. 6.

Balancing the equities, and taking into consideration the goals to be

achieved by awarding monetary sanctions under (1) my inherent powers, (2) Rule

9011(c)(1)(B), (3) 11 U.S.C. §105(a), and (4) 28 U.S.C. §1927, I conclude that an

---

[34]   N.T. of October 24, 2011 hearing at p. 5, lines 3 – 6.

award of sanctions in the amount of $75,000 is fair and appropriate. That amount is less than three-quarters of the amount in the Fee Statement, and probably two-thirds of the total legal fees when the time incurred after May 2014 is taken into account. A sanction of $75,000 is appropriate, is clearly valid, and serves the interests of justice. Because I find that the culpability of the individual Ettinger persons and entities in this proceeding is shared, the award of sanctions against Ettinger shall be joint and several. Bailey, 321 B.R. at 183; see also Loftus, 8 F. Supp. 2d at 464; Coquico, 508 B.R. at 948.

Clearly, the motivating force behind Ettinger's bad faith machinations was and remains Mr. Ettinger's wrongful and improper demand that the litigation against the Millers proceed. Mr. Tsarouhis should have, and perhaps could have, ended the litigation, but he did not. I find that Mr. Tsarouhis' conduct and approach to this case was not nearly as onerous as his attorney client, Mr. Ettinger. I therefore assess sanctions against Mr. Tsarouhis under Section 1927 in the limited amount of $20,000. And, although is exposure to the other sanction awards is joint and several with Mr. Ettinger and his law firm, I conclude that Mr. Tsaroouhis' share should be limited to that amount of $20,000. Of the total sanction of $75,000, therefore, Mr. Tsarouhis' share is limited to a total of $20,000.

42

# IV. **CONCLUSION**

For the reasons set forth throughout the discussion in this Memorandum Opinion, I conclude that Ettinger's conduct prior to March 18, 2011, does not objectively support sanctions under Rule 9011(c)(1)(B). I also conclude that Ettinger's conduct prior to March 18, 2011, did not rise to the level of bad faith or willful misconduct and is therefore not sanctionable under 11 U.S.C. §105(a) or my inherent power to sanction attorneys and parties who appear before me. Similarly, Mr. Tsarouhis' pre-March 18, 2011 conduct does not definitively establish either bad faith or willful or intentional misconduct and is not sanctionable under 28 U.S.C. §1927.

All of this changed after Ettinger deposed Mr. Kutkowski on March 18, 2011. After the deposition, Ettinger clearly knew their legal theory lacked evidentiary support,[35] but they pursued their adversary proceeding against the Millers nonetheless. They intentionally interfered with the fresh start that the Bankruptcy Code affords to honest debtors such as the Millers. Ettinger's interference was intended for the improper purpose of coercing payment of a completely dischargeable debt. After March 18, 2011, Ettinger's conduct was no longer objectively reasonable and is therefore sanctionable under Rule

---

[35]    Even without Mr. Tsarouhis' testimony, this is clear, but his remarks slam the lid. See references to his testimony in the text at pages 23 and 26 - 27, supra.

9011(c)(1)(B). Ettinger's conduct after March 18, 2011, was undertaken in bad faith, constitutes intentional and willful misconduct, and is sanctionable under both 11 U.S.C. §105(a) and my inherent power to sanction attorneys and parties who appear before me. Finally, Mr. Tsarouhis' pursuit of the Millers after March 18, 2011, unreasonably and vexatiously multiplied the proceeding and constituted bad faith and willful and intentional misconduct. His conduct as counsel, although less onerous than his client, is therefore also sanctionable under 28 U.S.C. §1927.

Balancing the equities, and taking into consideration the goals to be achieved by awarding sanctions under Rule 9011(c)(1)(B), 11 U.S.C. §105(a), my inherent powers, and 28 U.S.C. §1927, I find that an award of sanctions in the amount of $75,000 is clearly valid, is appropriate, and serves the interests of justice. Because I find that Ettinger's culpability in this proceeding is shared (but is not shared evenly), the award of sanctions against each of them shall be joint and several.

A corresponding order follows.

Date:  February 25, 2015

BY THE COURT

Richard E. Fehling
U.S. Bankruptcy Judge